# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>the Cellular Telephone Assigned<br>Call Number 707-513-6475 | )<br>)<br>)<br>)<br>)    Case No. *12 – M – 567* |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*   See Attachment A.

located in the     Eastern     District of     Wisconsin     , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

   ☑ evidence of a crime;

   ☐ contraband, fruits of crime, or other items illegally possessed;

   ☐ property designed for use, intended for use, or used in committing a crime;

   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, U.S.C., Section 846 | conspiracy to distribute a controlled substance |

The application is based on these facts:
See attached affidavit.

   ☑ Continued on the attached sheet.

   ☑ Delayed notice of   30   days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

                                  *Applicant's signature*

                                    Marshall S. Hermann
                                    *Printed name and title*

Sworn to before me and signed in my presence.

Date: *October 17, 2013*

                                    *Judge's signature*

City and state:   Milwaukee, Wisconsin                William E. Callahan, Jr., U.S. Magistrate Judge
                                                    *Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

IN THE MATTER OF AN APPLICATION
OF THE UNITED STATES OF AMERICA
FOR A WARRANT AUTHORIZING THE
DISCLOSURE OF DATA
RELATING TO A SPECIFIED
CELLULAR TELEPHONE

13-M- $567$

## AFFIDAVIT OF TASK FORCE OFFICER MARSHALL S. HERMANN

I, Marshall S. Hermann, being duly sworn, depose and states as follows:

## I.     TRAINING AND BACKGROUND

1.     I am a Task Force Officer with the Department of Justice, Drug Enforcement

Administration and a state certified law enforcement officer currently assigned to the Milwaukee

District office. I am federally deputized by the United States Department of Justice, Drug

Enforcement Administration ("DEA"). I have worked as a full time law enforcement officer

since June 2001. Prior to my assignment with DEA, I have worked full time as a law

enforcement officer for more than eleven (11) years with the Ozaukee County Sheriff's

Department and currently employed in the rank of Detective.

> a. I have utilized informants to investigate drug trafficking. Through informant
> interviews, and extensive debriefings of individuals involved in drug trafficking, I
> have learned about the manner in which individuals and organizations distribute
> controlled substances in Wisconsin and throughout the United States;
>
> b. I have also relied upon informants to obtain controlled substances from dealers,
> and have overseen undercover purchases of controlled substances;
>
> c. I have extensive experience conducting street surveillance of individuals engaged
> in drug trafficking. I have participated in the execution of numerous search
> warrants where controlled substances, drug paraphernalia, and drug trafficking
> records were seized;

1

d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f. I know that drug traffickers often use electronic equipment, cellular and land-line telephones, and pagers to conduct drug trafficking operations;

g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

i. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

2. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is also based upon information gained from interviews with cooperating citizen witnesses, informants, and defendants, whose reliability is established separately herein.

2

3. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

4. This affidavit is made in support of an order which seeks authorization for the disclosure of the approximate position of a cellular telephone is issued by Verizon Wireless cellular telephone assigned telephone number **(707) 513-6475**, and used by Paul Heiniger (hereinafter **TARGET TELEPHONE**).

5. Because this affidavit is submitted for the limited purpose of securing authorization for the mobile electronic tracking device described above, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrant.

## II. PROBABLE CAUSE

6. In early September of 2012, a Confidential Source (CS #1) contacted the Ozaukee County Sheriff's Department about a marijuana trafficking organization. CS #1 stated that Robert LEE has been getting marijuana shipped to him between June and August of 2012. CS #1 observed that LEE had received two separate packages, each of which contained at least 20 pounds of high-grade, vacuumed sealed marijuana. LEE was "bragging" to CS #1 about being paid $1,200.00 for accepting the packages in his name for Paul HEINIGER. HEINIGER has also told CS #1 that he obtains fake identification cards in Milwaukee so he doesn't travel under his own name in order to facilitate drug transactions.

7. CS #1 has been providing information to case agents since September, 2012. Case agents believe the information provided by CS #1 to be truthful and reliable because CS #1 has provided information regarding drug trafficking activities in the South-East Wisconsin area,

3

as well as other areas in the United States, which case agents have been able to verify through independent investigation. CS #1 has also made statements against CS #1's own penal interests. CS #1 has no criminal charges pending in State or Federal court. CS #1 is cooperating with law enforcement in order to be a good citizen. CS #1 has not received any payment for information provided to law enforcement. Finally, CS #1 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.

8. On September 6, 2012, Edward PATTERSON was arrested by the Northern Nevada Interdiction Task Force with 32.66 pounds of marijuana. At the time of his arrest, PATTERSON was driving a rental vehicle. PATTERSON informed Nevada Law Enforcement that he needed the money to "expand" his restaurant businesses. PATTERSON was booked into jail, and then released pending a review of the charges. According to court-authorized pen register and trap and trace information, at the time of his arrest PATTERSON was utilizing a cellular telephone assigned telephone number (414) 659-7771.

9. On September 18, 2012, Detectives with the Ozaukee County Sheriff's Department observed a white Ford F-350 bearing WI temporary plate H6061E parked in the lot of 250 E. Dekora Street, Saukville, Wisconsin. The vehicle relocated to Mill Street in Saukville, and was being operated by an unidentified white male, matching the description of Edward PATTERSON. The white male exited the vehicle, and went to apartment #250. A white male, matching the description of Paul HEINIGER let the other white male believed to be PATTERSON into the apartment. Further investigation, combined with surveillance, has positively identified PATTERSON as the primary operator of the white Ford F-350. This temporary plate corresponds to a vehicle bearing Wisconsin Registration EC47520 and VIN

4

1FT8W3BT6CEC53664.

10.     On September 20, 2012, Agents made contact with the registered owner of WI temporary plate H6061E, which was determined to be Gordie Bouche in Menomonee Falls. Case agents were able to verify that WI temporary plate H6061E came back to Fast Eddy's LLC., a LLC owned by Edward PATTERSON at 110 E. Belle Ave in Whitefish Bay.

11.     On September 21, 2012, Case agents observed the white Ford F-350 at the Belle Ave address in Whitefish Bay. A check also revealed that Fast Eddy's LLC address lists to McDonald's restaurant at 11250 N. Port Washington Rd in Mequon, WI and a second McDonald's restaurant at 8739 N. Port Washington Rd in Fox Point, WI. The Mequon Police Department has reports listing the owner of that McDonalds as Edward PATTERSON.

12.     On September 24, 2012, case agents again spoke with CS #1. CS #1 provided additional information regarding HEINIGER's and LEE's marijuana trafficking. CS #1 identified a subject named Andrew MEISEGEIER, who is friends with HEINIGER, and is also receiving marijuana packages for HEINIGER in the mail. CS #1 has also observed large amounts of bulk cash at HEINIGER's residence.

13.     United States Postal Inspectors have identified several packages tied to the HEINIGER and PATTERSON marijuana trafficking organization. The packages all originated in the Northern California area, and were shipped to addresses located in the Eastern District of Wisconsin. Based on the investigation to date, the packages are suspected to contain marijuana for the HEINIGER and PATTERSON marijuana trafficking organization.

14.     On November 20, 2012, United States Postal Inspectors contacted case agents, and stated that a suspicious package consistent with drug trafficking was to be delivered to an address in Sussex, WI. The package was sent from Sacramento, California. The Waukesha

5

County Metropolitan Drug Unit assisted USPS with a controlled delivery to the residence. The package was delivered to the residence, and a person accepted delivery of the package. The package was determined to contain 7 pounds of marijuana. The receiver (herein referred to as CS #2) admitted to receiving the packages of marijuana for Edward PATTERSON. CS #2 receives a discounted price on 2 pounds of marijuana for accepting the shipment, and then delivers the remaining 5 pounds to PATTERSON.

15.     CS #2 has been providing information to case agents since December, 2012. Case agents believe the information provided by CS #2 to be truthful and reliable because CS #2 has provided information regarding drug trafficking activities in the South-East Wisconsin area, as well as other areas in the United States, which case agents have been able to verify through independent investigation. CS #2 has also made statements against CS #2's own penal interests. CS #2 has made two successful recorded controlled meetings with targets of this investigation. CS #2 is cooperating in order to obtain consideration regarding drug trafficking charges. CS #2 has not received any payment for cooperation. Finally, CS #2 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.

16.     On September 27, 2012, case agents established surveillance at PATTERSON's residence located at 110 E. Belle Ave. in the City of Whitefish Bay, WI. Surveillance officers followed PATTERSON on his way to meet his father and several unidentified female subjects at the McDonalds restaurant located at 5344 N. Port Washington Road, Glendale, WI. PATTERSON, his father, and the female subjects all travelled across the street to the La Quinta Inn and Suites, located at 5110 N. Washington Rd. PATTERSON was observed entering the hotel with a large suitcase, and then leaving the same hotel without the suitcase. PATTERSON

6

made a phone call outside the hotel, and was observed returning to the hotel. Surveillance officers observed numerous vehicles then come to the hotel. PATTERSON was observed driving the white Ford F-350 during this surveillance.

17.     On December 3, 2012, case agents discovered that HEINIGER registered a blue Monte Carlo in California on October 3, 2012.

18.     On December 19, 2012, and again on January 17, 2013, case agents conducted a full debriefing of CS #2. Among other information, CS #2 stated that Edward PATTERSON was a large scale marijuana trafficker, and that PATTERSON's supplier was described as a "long haired hippie dude," which matches the physical appearance of Paul HEINIGER. CS #2 also stated that the "long haired hippie dude" was the guy in the organization that knew botany, and how to grow marijuana.

19.     CS #2 admitted to purchasing large quantities of marijuana from PATTERSON throughout 2012. During the fall of 2012, PATTERSON sold multiple pounds of marijuana to CS #2 each month. Based on court-authorized pen register and trap and trace data, during this time period PATTERSON primarily utilized a cellular telephone assigned telephone number (414) 659-7771.

20.     CS #2 identified other members of the HEINIGER and PATTERSON marijuana trafficking organization, one of which the CS identified as "Kevin". The CS stated that during the fall months of 2012, PATTERSON was in Seattle, Washington on business. While PATTERSON was in Seattle, PATTERSON told CS #2 to obtain marijuana from "Kevin". CS #2 provided case agents with a cellular telephone for "Kevin" of 414-232-0083. CS #2 stated that "Kevin" lives in the apartments across the street from Culver's on East Capital Drive in Shorewood, WI. "Kevin" was also the manager of the McDonald's restaurant located in

7

Mequon, WI, which PATTERSON is the owner of. CS #2 stated that "Kevin" is involved in marijuana trafficking with PATTERSON, and that CS #2 had purchased marijuana from "Kevin" at PATTERSON'S direction inside of "Kevin's" apartment.

21. On January 25, 2013, CS #2, escorted by case agents, CS #2 pointed out the apartment building located at 1420 E. Capital Drive, Shorewood, WI, and stated that this was the apartment building where "Kevin" lived, and where the CS had purchased marijuana from "Kevin" during the fall of 2012. CS #2 also identified a photograph of Kevin BREITZMAN, W/M, DOB: 10-08-1984, as "Kevin."

22. Through the investigation to date, including searches of public databases, as well as law enforcement databases, Kevin BREITZMAN has an address of 1420 E. Capital Drive, Apartment # 105, Shorewood, WI. BREITZMAN was arrested in Greenfield, WI in 2010, and listed McDonald's as his place of employment. It has further been determined through this investigation that BREITZMAN is the brother in-law of Edward PATTERSON, and is the brother of Edward PATTERSON's wife.

23. CS #2 stated that after PATTERSON was stopped in Reno, Nevada, and arrested for being in possession of multiple pounds of marijuana, PATTERSON informed CS #2 that PATTERSON was going to start sending packages via the United States Postal Service. PATTERSON said this method was more expensive, but was safer. PATTERSON told CS #2 that by utilizing this method, PATTERSON would send multiple packages containing marijuana to multiple houses in the Milwaukee area. CS #2 could not identify any other individuals who were receiving packages. CS #2 stated that PATTERSON did not tell CS #2 any of that information. PATTERSON stated that the parcels could not exceed a certain weight limit, so PATTERSON would only put a few pounds of marijuana in each package. PATTERSON told

8

CS #2 that PATTERSON was shipping anywhere from 30 to 60 pounds a month from California to Milwaukee, WI during the fall months of 2012. CS #2 stated that all the marijuana was packaged in multiple Food Saver bags to contain the smell. PATTERSON would use "clean" boxes which were either new or nice looking. CS #2 stated the boxes were usually the same type of box, which was a brown box assembled with shipping tape. CS #2 has observed numerous boxes in PATTERSON'S garage at 110 E. Belle Avenue, Whitefish Bay, WI. These boxes contained different names and addresses. CS #2 was able to observe that in the sender block of the shipping labels, and observed that all of the addresses on the labels originated in California.

24.     CS #2 stated that the CS has purchased multiple pounds of marijuana from PATTERSON up until the CS's arrest in November 2012. Since that time the CS has had two (2) recorded meets with PATTERSON, the most recent being on February 14, 2013. Case agents observed PATTERSON driving the white Ford F-350 just prior to this meeting. CS #2 stated to case agents that PATTERSON consistently drives the white Ford F-350 as his primary vehicle. During the course of CS #2's dealings with PATTERSON, PATTERSON conducted numerous marijuana transactions utilizing the white Ford F-350.

25.     On February 5, 2013, case agents received information from the United States Postal Service that Kevin BREITZMAN had been arrested in Sonoma County, California in Possession of approximately 22.2 pounds of high-grade marijuana.

26.     Case agents contacted Troopers with the California Highway Patrol to obtain further information regarding the arrest of Kevin BREITZMAN.

27.     Case agents learned that on February 4, 2013, the California Highway Patrol communications center broadcast that a possible reckless driver driving a red Nissan was southbound on Hwy. 101 in Sonoma County, California. The vehicle was located a short time

9

later, and a traffic stop was conducted. The driver of the vehicle produced a Wisconsin Driver's License, and was identified as Kevin BREITZMAN.

28.     Troopers smelled a slight odor of marijuana coming from within the vehicle. Troopers asked BREITZMAN about the odor, and initially BREITZMAN denied having marijuana in the vehicle. BREITZMAN then removed a small amount of marijuana from a backpack on the front seat.

29.     During a subsequent probable cause search of the vehicle, Troopers located 2 empty boxes for commercial grade vacuum sealer bags, used latex gloves, a packing tape gun with tape, receipts, airline flight itinerary and boarding passes, rental car summary, miscellaneous papers, including a receipt from Home Depot showing the purchase of 9 buckets, a cellular telephone (identified as the subject phone of this warrant), and 7 cardboard boxes. Each of the boxes was determined to contain one Orange Home Depot Paint Bucket. Inside of each bucket was sealed packages of marijuana inside vacuum sealed bags. The total weight of marijuana seized was determined to be approximately 22.2 pounds. Several of the receipts seized from the vehicle showed purchases for the tape, boxes, packing materials, buckets, and United States Postal Service Shipments.

30.     BREITZMAN was arrested for Possession of Marijuana for sales, and Transportation of Marijuana for Sales. BREITZMAN was read his Miranda Rights, and stated he wished to speak to an attorney. BREITZMAN was booked into the Sonoma County Jail. BREITZMAN had $1,150.00 in US Currency in his possession, all in $50 bills.

31.     Case agents reviewed the booking form from the Sonoma County Jail, and BREITZMAN listed an address of 1420 E. Capital Drive, Apartment #105, Shorewood, Wisconsin. BREITZMAN provided a telephone number of 414-232-0083. BREITZMAN listed

10

"McDonalds" as his employer, and his occupation as "Supervisor." BREITZMAN listed "Ed Patterson" as an emergency contact name, and his relationship as "brother" with an unknown address.

32. On February 6, 2013, at the request of case agents, the above described cellular telephone was shipped from the California Highway Patrol via UPS to the DEA Milwaukee District Office. On February 7, 2013, the cellular telephone arrived at the DEA Milwaukee District Office. In addition to the phone, Troopers with the California Highway Patrol sent photocopies of documents located in BREITZMAN'S vehicle.

33. Case agents examined these documents, and observed an Expedia booking receipt, showing traveler Kevin BREITZMAN, with a preferred phone number of 414-232-0083. BREITZMAN flew to San Francisco, CA on Saturday, February 2, 2013, on United Airlines, and was scheduled a return flight on Tuesday, February 5, 2013 on American Airlines. Case agents further observed that BREITZMAN rented a vehicle from Enterprise Rental Car on Saturday, February 2, 2013, and was scheduled to return the vehicle on Monday, February 4, 2013. BREITZMAN listed a preferred phone number of 414-232-0083 for the rental, and provided an email address of ed.patterson@partners.mcd.com.

34. Located in BREITZMAN's vehicle at the time of his arrest was a business card for Ed PATTERSON listing PATTERSON as the owner of Mequon and Fox Point McDonald's restaurants. Also located was a letter on McDonald's Letterhead stating "To whom it May Concern: I am authorizing my employee, Kevin Breitzman to use my Business Gold American Express between the dates of 2-213 thru 2-5-13. He will be traveling to California on business, may use the card for car, hotel, gas, food and incidentals. If you have any questions, feel free to

11

ask. 414-659-7771, Thanks, Edward Patterson." The letter had a signature below the name, and is believed to be signed by Edward PATTERSON.

35. Case agents reviewed the receipts located in the vehicle, and observed a receipt from C&M Self Storage in Ukiah, CA showing the purchase of 1 tape gun with tape, 4 large rolls of bubble wrap, and 9 Small Boxes, for a total of $58.53 paid in cash. Agents also observed Home Depot receipts from Ukiah, CA showing the purchase of 9 five gallon buckets and 9 lids for the buckets. These items were also paid for in cash.

36. Case agents observed a receipt from the Super 8 in Ukiah, CA showing a date of February 2, 2013, paid with American Express ending in 4004, for a total of $87.69 for lodging. The name at the bottom of the receipt showed "EM PATTERSON".

37. Case agents observed a receipt from the Ukiah Main Post Office in Ukiah, CA, dated February 4, 2013, at 11:26 am. This receipt showed an Express Mail package sent from this Post Office to "Milwaukee, WI 53221,, showing a shipment price of $73.65, which was paid for in cash. This package weighed 7 lbs, 1.2 ounces, and showed Label #EI719082615US, with an expected delivery date of February 6, 2013. Also located was a "Customer Copy" of the Express Mail package, for Label #EI719082615US. The sender information was "T. Vargas, 1599 N. Bush St, Ukiah, CA 95482." The package was sent to "Tammy Webler, 6752 S. 17th Street, Milwaukee, WI 53221." The waiver of signature box was checked on the label, with an unreadable signature authorizing the delivery to be accepted without a signature.

38. Case agents observed an additional receipt from the Talmage MPO in Ukiah, CA, dated February 4, 2013, at 12:03 pm. This receipt showed a Priority Mail package sent from this Post Office to "Pewaukee, WI 53072," showing a shipment price of $44.60, which was paid for

12

in cash. This package weighed 12 lbs., 10 ounces, and showed Label #9505510666193035433800, with an expected delivery date of February 6, 2013.

39. On February 6, 2013, Express Mail package, with Label #EI719082615US, (described above) was intercepted by Milwaukee HIDTA agents, and agents with the USPS. A federal search warrant was obtained for this parcel in the Eastern District of Wisconsin. The parcel was discovered to contain approximately 1,531 grams of high-grade marijuana. Agents observed that the shipping label was affixed to the exterior of the box. Inside of the parcel, agents observed an orange Home Depot bucket with a lid, along with bubble wrap. Contained inside of the Home Depot bucket was what appeared to be approximately 3 pounds of high-grade marijuana. This parcel was not disturbed, and was sent to the DEA Northeast Crime Laboratory to be processed for fingerprint evidence, as well as lab testing of the marijuana.

40. During the recorded meeting between PATTERSON and CS #2 on February 14, 2013 PATTERSON asked CS #2 to start distributing multiple pounds of marijuana again. PATTERSON told CS #2 that PATTERSON had extremely "high quality" marijuana for sale and asked CS #2 if he knew of anyone else who wanted to purchase the marijuana. CS #2 told PATTERSON that CS #2 was not interested at the time.

41. Case agents have been monitoring court authorized pen registers on Edward PATTERSON's and Paul HEINIGER's cellular telephones. According to this data, there were 79 contacts between PATTERSON's and BREITZMAN cellular telephones between February 2 and February 5, 2013.

42. While reviewing the California Highway Patrol reports related to BREITZMAN's arrest, case agents observed that the Troopers, upon stopping BREITZMAN, briefly examined BREITZMAN's cellular telephone at the time of BREITZMAN's arrest. Troopers observed that

13

BREITZMAN had cellular telephone numbers with the area code "707," which is the area code for Northern California. Based on my training and experience, drug traffickers utilizing area code "707" in California are more than likely the supplier, or closely connected to the ultimate source of supply for the drug trafficking organization. According to court authorized pen register and trap and trace data for cellular telephone assigned telephone number (414) 659-7771, case agents have observed that PATTERSON has contacted numerous phone numbers with the "707" area code.

43. According to court authorized pen register and trap and trace data as of April 19, 2013, cellular telephone assigned telephone number (414) 659-7771 is still actively being used by PATTERSON.

44. On March 7, 2013, the Honorable Patricia J. Gorence, United States Magistrate Judge, Eastern District of Wisconsin, signed an order authorizing the installation and monitoring of an electronic tracking device for the white Ford F-350 for a period of 45 days. Also on that date, Magistrate Gorence signed an order authorizing the disclosure of data related to the cellular telephone assigned telephone number (414) 659-7771 for a period of 45 days.

45. On March 14, 2013, case agents installed the tracking device on the white Ford F-350. On March 12, 2013, case agents began to receive data regarding the cellular telephone assigned telephone number (414) 659-7771.

46. Since that time, case agents have monitored the location of the white Ford F-350 on a regular basis. Case agents have been able to confirm that Edward Patterson is utilizing the white Ford F-350 to further his drug distribution activities.

47. For example, case agents have conducted mobile surveillance in conjunction with the location monitoring of the white Ford F-350, and have observed Patterson meeting with

14

various other individuals whom case agents believe, based on the investigation to date, are involved in Patterson's drug distribution network. Additionally, on occasion, the white Ford F-350 was observed traveling to Ozaukee County shortly after United States Postal packages were sent to Wisconsin from California. Based on their training and experience, and the investigation to date, case agents believe these packages contain marijuana or proceeds from Patterson's drug-trafficking activities, or both.

48. Case agents have further utilized the location monitoring device for the white Ford F-350 to establish a pattern of Patterson's daily activities, which include regularly stopping at locations in the areas of Patterson's suspected co-conspirators' residences, including the areas of Cudahy, Fox Point, Franklin, Glendale, Grafton, Greendale, Milwaukee, Mequon, Saukville, West Bend, and West Allis. Case agents have further identified additional areas where Patterson in the white Ford F-350 has stopped for periods of time, and are currently attempting to identify the specific locations to which Patterson is traveling. Case agents have also identified other suspected customers of Patterson while conducting surveillance of Patterson in the white Ford F-350.

49. On April 19, 2013, the Honorable Patricia A. Gorence, United States Magistrate Judge, Eastern District of Wisconsin, signed an order authorizing the continued monitoring of an electronic tracking device for the white Ford F-350 for a period of 45 days. The monitoring period expired on June 3, 2013.

50. Since April 19, 2013, Patterson has continued to use the white Ford F-350 to further his drug distribution activities. For example, on April 26, 2013, the location monitoring device revealed that the white Ford F-350 was at Patterson's residence located at 110 E. Belle Ave. in the Village of Whitefish Bay, WI. Upon arrival at the residence, case agents

15

conducted surveillance and observed Patterson and Paul Heiniger. As discussed above, Heiniger has been identified as Patterson's marijuana source from California. Heiniger was driving a silver 2006 BMW four-door sedan bearing WI license plate 257HZJ. According to Wisconsin Department of Transportation records, this vehicle is registered to Patterson's wife Tanya Patterson. Case agents observed Heiniger arrive in this vehicle and park directly in front of Patterson's residence. Heiniger exited the vehicle and walked to Patterson's residence. Case agents then observed Heiniger and Patterson walk from the residence to the passenger side of the vehicle. Heiniger held a red plastic grocery style bag which appeared to be empty. Heiniger opened the front passenger side door and leaned over into the vehicle. As Heiniger leaned over into the vehicle Patterson stood behind him, looked around, and lit a cigarette. It appeared that Heiniger removed items from the vehicle and placed them into the red plastic bag. After Heiniger finished, he and Patterson stood in the driveway for a brief period and talked with each other. As they talked, Heiniger and Patterson walked back to the fence line where Heiniger gave the red plastic bag back to Patterson, which appeared to contain something. Based on their training and experience, and the investigation to date, case agents believe that Patterson and Heiniger engaged in a transaction involving drugs or drug proceeds.

51.    Case agents are aware that when HEINIGER was observed driving the vehicle in Wisconsin on April 26, 2013, he was staying at the Residence Inn located at 7275 N. Port Washington Rd. in Glendale, WI. The hotel room was registered to CASEY HOUTSINGER, under phone number (707) 472-7117. A hotel employee identified HEINIGER by photograph as the individual staying in the hotel room registered under HOUTSINGER's name. When the Residence Inn employee called HOUTSINGER at (707) 472-7117 after the room was discovered uninhabited, an unidentified male, believed to be HEINIGER, answered the phone and said that

16

they had checked out of the room. Based on information obtained pursuant to a grand jury subpoena, case agents are aware that as of May 2013, HOUTSINGER's credit card statements were sent to P.O. Box 421133, San Francisco, CA 94142. Review of HOUTSINGER's monthly statements shows that between April 2012 and May 2013, HOUTSINGER had numerous charges in Wisconsin and California, including Milwaukee, Kenosha, San Francisco, Healdsburg, and Willits.

52.     Case agents reviewed video surveillance of PATTERSON's residence from May 30, 2013, when he returned home to 110 E. Belle Ave. in the Village of Whitefish Bay in the white Ford F-350. Case agents observed PATTERSON exit the white Ford F-350 and remove a large cardboard box from the rear driver's seat. The large cardboard box appeared to be consistent with previous cardboard box packages received by Ken LUBECKI and Penny SEIDL via U.S. Mail, which case agents believe contain distribution amounts of marijuana. Case agents are aware, based on USPS records, that the last package delivered to LUBECKI and SEIDL was on June 10, 2013. PATTERSON walked thru the garage to the rear patio and placed the package on the ground near the rear patio door. PATTERSON removed a white five gallon bucket from the cardboard box. PATTERSON removed the contents from the bucket and placed them in a large black plastic garbage bag. Case agents observed an unidentified white male subject meet with PATTERSON at the rear of his residence.     Case agents also observed Andrea MARQUARDT arrive at the residence and meet with PATTERSON. Case agents observed MARQUARDT walk over to the white Ford F-350 carrying a large bag along with the black plastic garbage bag. MARQUARDT placed the large bag into the rear driver's side of the white Ford F-350. MARQUARDT then walked towards the road carrying the black plastic garbage bag. MARQUARDT eventually traveled out of view of the video surveillance. MARQUARDT

17

later returned to the fenced in area of PATTERSON's yard, however she no longer carried the black plastic garbage bag. Case agents then observed PATTERSON walk out from the fenced in area of his yard carrying two opened cardboard boxes and a white five gallon bucket. PATTERSON placed the five gallon bucket into the rear driver's side of the white Ford F-350. PATTERSON placed the first cardboard box into a garbage bin located behind a fence on the east side of his garage. PATTERSON placed the second cardboard box into the rear driver's side of the white Ford F-350. Based on their training and experience, and the investigation to date, case agents believe PATTERSON used the white Ford F-350 to transport a distribution quantity of marijuana to his home in Whitefish Bay, where he broke it down into smaller quantities for re-sale.

53. On May 28, June 12, and June 19, 2013, case agents debriefed CS #3 who is a long term employee of PATTERSON's at the Mequon, Fox Point, and Glendale McDonald's. CS #3 had extensive knowledge of regarding PATTERSON's marijuana trafficking and the use of his businesses to fund the drug trafficking organization. CS #3 stated that BREITZMAN told the CS that PATTERSON's wife kicked him out of the house and that PATTERSON had moved his marijuana supply to BREITZMAN's house and later to a storage unit. Grand Jury subpoena results confirmed that BRIETZMAN rents a U-Haul storage unit located at 4390 N. Richards St. in the City of Milwaukee. The location monitoring device has revealed that the white Ford F-350 has increasingly travelled to the storage unit on numerous occasions and at a frequency of several times per week.

54. CS #3 has been providing information to case agents since May of 2013. Case agents believe the information provided by CS #3 to be truthful and reliable because CS #3 has provided information regarding drug trafficking activities in the South-East Wisconsin area,

18

which case agents have been able to verify through independent investigation. CS #3 has also made statements against CS #3's own penal interests. CS #3 is cooperating in order to obtain consideration regarding a relative's drug trafficking charges. CS #3 has not received any payment for cooperation. Finally, CS #3 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.

55.    CS#3 is employed as the supervisor of three McDonald's restaurants that are owned by Fast Eddy's LLC and Hotter Faster Eddy's LLC, corporations that are controlled by PATTERSON. The three McDonald's owned by PATTERSON's corporations are located at 11250 N. Port Washington Road, Mequon, Wisconsin; 8739 North Port Washington Road, Fox Point, Wisconsin; and 5344 North Port Washington Road, Glendale, Wisconsin. CS#3 has been employed by McDonald's in various positions for the past eleven years. According to CS#3, during November of 2012, PATTERSON approached CS#3 about receiving shipments of marijuana packages on his behalf in exchange for compensation. CS#3 refused to receive marijuana packages on behalf of PATTERSON.

56.    According to CS#3, PATTERSON told CS#3 that he uses cash from all three McDonalds that he owns to make purchases of marijuana. CS#3 stated that typically the cash deposits from the three McDonalds are totaled several times a day and put into the safe with a deposit slip wrapped around the currency that reflects the date and amount of cash contained in each bundle. On numerous occasions during the last six months, PATTERSON has asked CS#3 provide him with cash deposits. CS#3 keeps the deposit slip with the amount of currency and date and does not deposit it until PATTERSON re-pays CS#3.

57.    CS#3 is aware based upon conversations with BREITZMAN and PATTERSON, that BREITZMAN is involved in traveling to California to obtain marijuana, the receipt of

19

marijuana packages in the mail in the greater Milwaukee area and the trafficking of marijuana in the Eastern District of Wisconsin. CS#3 is aware that days after BREITZMAN's arrest in California, February of 2013, that PATTERSON paid BREITZMAN's bail. Case agents are aware based upon grand jury subpoenas that PATTERSON's business credit card account was used to pay a bail bondsman in California to post BREITZMAN's bond. CS#3 is also aware that PATTERSON was arrested in Nevada during the fall of 2012 for a marijuana charge.

58. On December 5, 2012, PATTERSON gave CS#3 an AT&T iPhone cellular telephone bearing number 414-712-8835, for conducting McDonalds business as well as for CS#3's personal use. CS#3 pays approximately $48 per month for CS#3's cellular telephone. According to CS#3, CS#3's cellular telephone is assigned to PATTERSON's family plan. PATTERSON has never checked the phone and the phone is in the custody and control of CS#3.

59. According to CS#3, PATTERSON uses CS#3's cellular telephone to contact CS#3 for business reasons. In numerous audio and text messages, PATTERSON informed CS#3 that he was involved in drug trafficking. PATTERSON using (414) 659-7771 texted CS#3's cellular telephone, "People constantly stealing, I've had 2 bags of money stolen, 25,000 each, one of them ended up being a friend of my dads at Fed Ex, I had two boxes worth 30,000 each stolen. If I didn't have the thing in Nevada, and that other shit, I would be at 400,000 maybe more." Based on their training and experience, and the investigation to date, case agents believe that PATTERSON is complaining to CS#3 that he had shipments containing drug proceeds stolen from him.

60. As another example, PATTERSON using (414) 659-7771 texted CS#3's cellular telephone, "The bank hates me, I'm constantly switching, 20's for 100's I have like 5 security boxes. That's why I fly someone to California now." Based on their training and experience,

20

and the investigation to date, case agents believe that PATTERSON is complaining about exchanging smaller quantity drug proceeds bills for larger bills. PATTERSON indicated that he now sends someone to California to purchase marijuana.

61.     CS #3 also stated that on July 1, 2013, PATTERSON told CS #3 that BREITZMAN and Paul MARKIEWICZ were sent to California to attend BREITZMAN's court date. The location monitoring device revealed that the white Ford F-350 travelled to an All Credit Lenders store located at 8536 W. Brown Deer Rd. in the City of Milwaukee on June 29, 2013. Case agents revealed that All Credit Lenders is a business that provided cash advance loans, line of credit loans, payday loans, and installment loans. According to CS# 3, MARKIEWICZ is one of PATTERSON's employees who works at the Mequon, Fox Point, and Glendale McDonalds.

62.     Based on telephone records, case agents are aware that on July 1, 2013, a call was placed to (707) 472-7117, CASEY HOUTSINGER's cellular telephone, from (262) 844-1127, the cellular telephone used by PAUL MARKEWICZ. As discussed above, HOUTSINGER is an associate of HEINIGER's and case agents believe HEINIGER previously used the (707) 472-7117 number. Case agents believe that while MARKEWICZ was in California he contacted HEINIGER on the (707) 472-7117 number.

63.     After July 3, 2013, MARKIEWICZ's phone began to have contact with cellular telephone number (831) 461-5927. After July 3, 2013, PATTERSON's cellular telephone, (414) 659-7771, also began to have contact with cellular telephone number (831) 461-5927. Case agents are aware that 831 is an area code associated with Monterey, Santa Cruz, and San Benito Counties, all of which are in California. Records from the pen register and trap and trace reveal

21

that once PATTERSON and MARKIEWICZ began to contact (831) 461-5927 in early July, PATTERSON and MARKIEWICZ stopped calling the (707) 472-7117 number, which case agents believe HEINIGER previously used, as frequently.

64.    For example, records from the pen register and trap and trace reveal that between July 1, 2013 and July 7, 2013, PATTERSON had contact with the (707) 472-7117 number 16 times. Thereafter, between July 8, 2013 and July 18, 2013 PATTERSON had contact with (831) 461-5927 24 times and only had contact with the (707) 472-7117 number once.    Case agents have been unable to obtain the records from the pen register and trap and trace for the time period of July 18, through July 24, 2013; however, records from the pen register and trap and trace reveal several text messages between PATTERSON and (831) 461-5927 on today's date, July 25, 2013. Additionally, records from the pen register and trap and trace reveal that on July 1, 2013, MARKEWICZ had contact with the (707) 472-7117 number twice; however, MARKEWICZ has not had contact with the (707) 472-7117 number since July 1, 2013. Records from the pen register and trap and trace reveal that between July 3, 2013 and July 11, 2013 MARKEWICZ called (831) 461-5927 five times. Based on their training and experience, and the investigation to date, case agents believe that HEINIGER is the user of (831) 461-5927.

65.    According to CS#3, upon returning from California, MARKIEWICZ told CS#3 that PATTERSON sent him to California. PATTERSON arranged for MARKEWIECZ to meet with an unidentified male once he arrived in California. MARKIEWICZ told CS#3 that after he met with the guy, they went "shopping" for marijuana. MARIEWICZ then mailed the marijuana back to several addresses in the Milwaukee, WI area.

22

66.     According to records from the United States Postal Service, between July 2, 2013 and July 15, 2013, 11 packages were mailed from Ukiah, CA, Talmage, CA, Boulder Creek, CA, and Ben Lomond, CA, to Andrea MARQUARDT's addresses in New Berlin, WI and Pewaukee, WI; Ken LUBECKI's residence in Saukville, WI; John and Tammy WEBLER's residence in Milwaukee, WI; and to an unidentified subject in Greenfield, WI.  As discussed above, MARQUARDT and LUBECKI are believed to be drug associates of PATTERSON's.  Webler was the intended recipient of a package containing approximately 1,531 grams of high-grade marijuana.  Based on their training and experience, and the investigation to date, case agents believe the 11 packages mailed from California to Wisconsin contain distribution quantities of marijuana.

67.     According to records from the United States Postal Service, on July 2 and July 12, 2013, packages were sent via United States Mail to 14655 W. Park Ave, Boulder Creek, California, were addressed to PAUL HEINIGER.  These packages were signed for by PAUL HEINIGER.  Based on their training and experience, and the investigation to date, case agents believe the packages contain payment for previous marijuana shipments.

68.     According to a check of a law enforcement database, on July 8, 2013, the silver 2006 four door BMW sedan bearing WI license plate 257HZJ was queried by the Ukiah Police Department, in Ukiah, CA.  On July 24, 2013, case agents observed PAUL HEINIGER operating the silver 2006 four door BMW sedan with WI license plate 257HZJ on Interstate Highway 43 in the City of Milwaukee.  Case agents followed the vehicle to Saukville, WI, near LUBECKI's house.  Case agents ceased surveillance for fear of alerting HEINIGER to the presence of law enforcement.

23

69. On July 25, 2013, the Honorable William E. Callahan, Jr. United States Magistrate Judge, Eastern District of Wisconsin, signed an order authorizing the disclosure of data related to (831) 461-5927 for a period of 45 days. The monitoring period expired on September 8, 2013. On September 9, 2013, the Honorable Patricia J. Gorence, United States Magistrate Judge, Eastern District of Wisconsin, signed an order authorizing the continued disclosure of data related to (831) 461-5927. This order is scheduled to expire on October 24, 2013.

70. Since July 25, 2013, HEINIGER has continued to use to further his drug distribution activities. For example, since July 25, 2013, records from the pen register and trap and trace reveal that has had contact with the following known drug associates involved in HEINIGER's and PATTERSON's drug distribution activities with the following frequency: James Stern (located in Whitefish Bay, Wisconsin) 52 times; Kenneth Lubecki (located in Saukville, Wisconsin) 15 times; Daniel Meyer (located in Saukville, Wisconsin) 13 times; and with Edward PATTERSON (located in Mequon, Wisconsin) 7 times.

71. Additionally, on August 6, 2013, case agents executed a search warrant at MARKIEWICZ' residence located at W124 N13025 Wasaukee Road, Village of Germantown, Washington County. A search of the residence revealed a white 5 gallon sized bucket with a sealed top, containing marijuana packaged in a vacuum seal bag. The bucket and vacuum seal bags recovered were consistent with the method of packaging and transport of marijuana observed at PATTERSON's residence and recovered from BREITZMAN's traffic stop in California on February 4, 2013. Also discovered in a bedroom believed to be occupied by MARKIEWICZ was a total of $11,020 U.S. currency concealed inside shoes in a shoe box. The currency was in denominations of $100s, $50s, and $20s, which is consistent with denominations

24

used in the transactions of controlled substances. Approximately 96.6 grams of marijuana was discovered inside the residence. A search of a silver Toyota 4-Runner owned by MARKIEWICZ revealed six (6) large black duffle bags. The large black duffle bags were consistent with duffle bags observed at PATTERSON's residence during suspected drug transactions.

72. Also recovered from the search of MARKIEWICZ' residence was a letter, typed on McDonald's letterhead, stating "To Whom it May Concern: Paul Markiewicz is authorized to use the American Express Business card. He is traveling to California on business to look at equipment. He is authorized to use it from June 30th until July 4th. If you have any questions please contact Edward Patterson, the owner, at 414-659-7771. Thanks, Edward Patterson." MARKIEWICZ was questioned about the letter and admitted that he was in California during the dates noted in the letter to escort BREITZMAN to his court appearance.

73. On August 12, 2013, a search warrant was obtained for MARKIEWICZ' Motorola Atrix 3 cellular phone, which was recovered during the search of his residence. A search of the phone revealed that Paul HEINIGER's cell phone number 831-461-5927 was listed in MARKIEWICZ' cell phone contacts under the fake name "Skill Calumet."

74. On August 28, 2013, case agents assisted the Mendocino Major Crimes Task Force with the execution of a search warrant of HEINIGER's residence located at 1715 Elm Lane, Willits, California. HEINIGER's associate, Casey HOUTSINGER, was the only occupant located at the residence. A search of the residence revealed a U.S. Priority Mail postal package parcel sent from "Dan Meyer 133A N. Mill St., Saukville, WI 53808" addressed to "Dug Debolt 1715 Elm Ln., Willits, CA 95490." HOUTSINGER identified DEBOLT as her roommate at the residence. The search also revealed approximately 2 pounds of marijuana, a garbage bag

25

containing marijuana stems and seeds, drug packaging materials, including 5 gallon buckets, a vacuum sealer and bags, bubble wrap, Styrofoam packing peanuts, and rolls of box tape. The packaging materials were consistent with the method of packaging and transport of marijuana observed at PATTERSON's residence and discovered from BREITZMAN's traffic stop in California on February 14, 2013. Additionally, a hand written note stating "Heiniger 123 N. Highland Ave. Thiensville 53092" was recovered during the search of HEINIGER's residence. Case agents are aware that 123 N. Highland Avenue, Thiensville, Wisconsin 53092 is HEINIGER's parents' address.

75. While the search warrant was being executed on HEINIGER's residence in Willits, California the cellsite pings placed (831) 461-5927 in the area of Low Gap Road near Ukiah, a neighboring city of Willits, California. Case agents spoke with members of the Mendocino Major Crimes Task Force who were familiar with Low Gap Road and the surrounding area. Members of the Mendocino Major Crimes Task Force stated that Low Gap Road is located in a remote area in the mountains just west of Ukiah, California and that the area is known as an established area for illegal marijuana grows.

76. On October 8, 2013, a federal grand jury in this district returned a thirteen-count indictment charging six defendants, including PATTERSON, HEINIGER, BREITZMAN, and MARKIEWICZ, with various drug-trafficking offenses, including knowingly and intentionally conspiring to distribute 100 kilograms or more of a mixture and substance containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846, 841(b)(1)(B), and Title 18, United States Code, Section 2, and money laundering, in violation of Title 18, United States Code, Section 1956(a). *See United States v. Edward Patterson, et. al*, Case No. 13-Cr-193 (E.D. Wis.). Thereafter, on October 16, 2013, case agents in the metro

26

Milwaukee area executed numerous federal search warrants in connection with the above-mentioned case, and arrested five of the six defendants charged with federal drug-trafficking offenses. The defendants appeared in court the same day.

77.     Also on October 16, 2013, case agents in California attempted to apprehend Paul HEINIGER by analyzing the court-authorized location data related to his cellular telephone bearing telephone number (831) 461-5927. However, the court-authorized location data was not precise enough to provide case agents with HEINIGER's exact location.

78.     On October 16, 2013, case agents in California interviewed K.N., a known associate of Paul HEINIGER. According to K.N., he and HEINIGER had been staying at a Motel 8 in Ukiah, California for the past week. K.N. indicated that during the afternoon hours of October 15, 2013, K.N. and HEINIGER checked out of the hotel and went their separate ways, with HEINIGER leaving to visit his parents in Wisconsin. K.N. provided the number of **(707) 513-6475 (TARGET TELEPHONE)** as the current number for HEINIGER. K.N. indicated that s/he receives calls from HEINIGER at **(707) 513-6475 (TARGET TELEPHONE)** as well as calls this number to get in contact with HEINIGER. A check of **(707) 513-6475 (TARGET TELEPHONE)** reveals that it is associated with a Verizon Wireless cellular telephone.

79.     Case agents are requesting an order authorizing the disclosure of data related to the **(707) 513-6475 (TARGET TELEPHONE)** for 45 days to locate HEINIGER, to further investigate HEINIGER's activities, and to identify additional locations to which HEINIGER is traveling in order to further his drug distribution network.

27

## III. CONCLUSION

80.     The information detailed above establishes that there is probable cause to believe

Paul Heiniger and others have engaged in a conspiracy to distribute marijuana, in violation of

Title 21, United States Code, Sections 841(a)(1) and 846. I further believe that obtaining the

location information for **(707) 513-6475 (TARGET TELEPHONE)** will likely lead to evidence

of these crimes, namely, the location of storage locations of contraband and drug proceeds and

assist in identifying the location of other drug distributors in this drug trafficking organization.


MARSHALL S. HERMANN
DEA Task Force Officer
United States Department of Justice
Drug Enforcement Administration

Sworn to and subscribed before me
this 7 day of October, 2013.

WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
Magistrate No. *13 - M - 567*

28